SEND

ENTER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TIMOTHY JEFFREY, | ) | No. EDCV 01-0092-RC |
| Plaintiff, | ) | |
| | ) | OPINION AND ORDER |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Timothy Jeffrey filed a complaint on February 5, 2001, seeking review of the Commissioner's decision denying his applications for disability benefits. On September 6, 2001, pursuant to the parties' stipulation, the Court entered judgment remanding this matter to the Social Security Administration ("SSA") under sentence six of 42 U.S. § 405(g). On June 22, 2006, pursuant to the stipulation of the parties, this Court reopened the case. The Commissioner answered the complaint on September 25, 2006, and the parties filed a joint stipulation on February 7, 2007.

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue is substituted as defendant in the action.

**BACKGROUND**

**I**

On February 20, 1996, plaintiff applied for disability benefits under Title II of the Social Security Act ("the Act") and the Supplemental Security Income program of Title XVI of the Act, 42 U.S.C. §§ 423, 1382(a), claiming an inability to work since October 24, 1993,[2] due to neck pain, a compression fracture in his low back, and hip problems. Certified Administrative Record ("A.R.") A.R. 15, 74-77, 80, 145-47. The plaintiff's applications were denied initially on May 2, 1996, and were denied again on September 18, 1996, following reconsideration. A.R. 61-70. The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge Mason D. Harrell, Jr. ("the ALJ") on October 31, 1997. A.R. 24-56, 71. On February 26, 1998, the ALJ issued a decision finding plaintiff is not disabled. A.R. 11-22. The plaintiff appealed this decision to the Appeals Council, which denied review on January 12, 2001. A.R. 4-10.

**II**

The plaintiff, who was born on November 25, 1951, is currently 55 years old. A.R. 74, 145. He has a high school degree and has previously worked as a pressman. A.R. 27-29, 84.

//
//
//

---

[2] The plaintiff initially alleged an onset date of July 4, 1989, but later amended the onset date to October 24, 1993. A.R. 15.

2

On May 9, 1992, Dr. Pineda,[3] a psychiatrist, examined plaintiff and found he exhibited "rigid and quite inflexible defensive behavior in an effort to hold on to fixed ideas of being totally disabled and a possible non-productive relationship no matter what it entails in his personality." A.R. 20.

On July 25, 1996, David H. Lee, M.D., a psychiatrist, examined plaintiff and found plaintiff has no diagnosable mental impairment. A.R. 118-20. Dr. Lee opined:

> No signs or symptoms of mental illness or psychiatric condition was [sic] noted at this evaluation. He also gave this examiner an impression that he was not that sincere in providing his history, and his general attitude was not that of serious[ness]. He would be able to understand, carry out, and remember simple instructions. However, he does not appear to be a responsible person and may have some difficulty responding appropriately to co-workers, supervisors, and [the] public. In a work situation there is the possibility that he may not participate in a responsive manner. He is able to handle his own funds for his best interest.

A.R. 120.

---

[3] Dr. Pineda's May 9, 1992 evaluation is missing from the record, but the ALJ discussed it in his decision. A.R. 20. Since both parties stipulate the ALJ fairly and accurately summarized Dr. Pineda's opinion, see Jt. Stip. at 2:16-21, the Court accepts the ALJ's discussion of Dr. Pineda's opinion as correct.

1     On August 6, 1996, David E. Gross, M.D., a nonexamining
2 psychiatrist, opined plaintiff has no medically determinable
3 psychiatric impairment.  A.R. 121-30.
4
5     Medical expert Craig C. Rath, Ph.D., testified at the
6 administrative hearing on October 13, 1997, that plaintiff has no
7 medically determinable mental impairment.  A.R. 34-35.
8
9                           **DISCUSSION**
10                               **III**
11     The Court, pursuant to 42 U.S.C. § 405(g), has the authority to
12 review the Commissioner's decision denying plaintiff disability
13 benefits to determine if his findings are supported by substantial
14 evidence and whether the Commissioner used the proper legal standards
15 in reaching his decision.  Parra v. Astrue, 481 F.3d 742, 746 (9th
16 Cir. 2007); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir.
17 2006).  "In determining whether the Commissioner's findings are
18 supported by substantial evidence, [this Court] must review the
19 administrative record as a whole, weighing both the evidence that
20 supports and the evidence that detracts from the Commissioner's
21 conclusion."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998);
22 Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001).  "Where the
23 evidence can reasonably support either affirming or reversing the
24 decision, [this Court] may not substitute [its] judgment for that of
25 the Commissioner."  Parra, 481 F.3d at 746; Robbins, 466 F.3d at 882.
26
27     The claimant is "disabled" for the purpose of receiving benefits
28 under the Act if he is unable to engage in any substantial gainful

4

activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). "The claimant bears the burden of establishing a prima facie case of disability."  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case.  20 C.F.R. §§ 404.1520, 416.920.  In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting him from performing basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(g), 416.920(g).
//

Where there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner has supplemented the five-step sequential evaluation process with additional regulations dealing specifically with mental impairments. Maier v. Comm'r of the Soc. Sec. Admin., 154 F.3d 913, 914 (9th Cir. 1998) (per curiam). First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work (Part A). 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). Second, when the claimant establishes these medical findings, the degree of functional loss resulting from the impairment must be rated by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) deterioration or decompensation in work or work-like settings (Part B). 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. 20 C.F.R. §§ 404.1520a(c), 416.920a(c). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing. 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment employing the evaluation of the limitations considered in Part B. 20 C.F.R. §§ 404.1520a(c)(3-4), 416.920a(c)(3-4).[4]

Applying the five-step sequential evaluation process, the ALJ

---

[4] Effective September 20, 2000, the Commissioner revised his regulations for evaluating mental impairments. See 20 C.F.R. §§ 404.1520a, 416.920a (2001). However, since the ALJ issued his decision before the effective date of the revised regulations, the prior method of evaluating mental impairments applies.

found plaintiff has not engaged in substantial gainful activity since October 24, 1993.  (Step One).  The ALJ then found plaintiff has severe lumbar disc disease, but does not have a severe mental impairment.  (Step Two).  The ALJ further found plaintiff does not have an impairment or combination of impairments that meets or equals a Listing.  (Step Three).  The ALJ next determined plaintiff is unable to perform his past relevant work.  (Step Four).  Finally, the ALJ concluded plaintiff can perform a significant number of jobs in the national economy; therefore, he is not disabled.  (Step Five).

**IV**

The Step Two inquiry is "a de minimis screening device to dispose of groundless claims."  Smolen, 80 F.3d at 1290; Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005).  Including a severity requirement at Step Two of the sequential evaluation process "increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account."  Bowen v. Yuckert, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L. Ed. 2d 119 (1987).  However, an overly stringent application of the severity requirement violates the Act by denying benefits to claimants who meet the statutory definition of disabled.  Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994).

A severe impairment or combination of impairments within the meaning of Step Two exists when there is more than a minimal effect on an individual's ability to do basic work activities.  20 C.F.R. §§

404.1521(a), 416.921(a); Webb, 433 F.3d at 686. Basic work activities are "the abilities and aptitudes necessary to do most jobs," including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling, as well as the capacity for seeing, hearing and speaking, understanding, carrying out, and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b); Webb, 433 F.3d at 686. If a claimant meets the burden of demonstrating he suffers from an impairment affecting his ability to perform basic work activities, "the ALJ *must* find that the impairment is 'severe' and move to the next step in the SSA's five-step process." Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir. 2001) (emphasis in original); Webb, 433 F.3d at 686.

Here, the ALJ found plaintiff does not have a severe mental impairment. A.R. 21. However, plaintiff contends the ALJ's decision is not supported by substantial evidence because the ALJ did not discuss, and thus implicitly rejected, some of Dr. Lee's opinions. Specifically, plaintiff claims the ALJ failed to address Dr. Lee's opinions that plaintiff "does not appear to be a responsible person and may have some difficulty responding appropriately to co-workers, supervisors, and public. In a work situation there is the possibility that he may not participate in a responsive manner." A.R. 120.

"[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician[,]" Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Widmark v.

8

Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006), and "[e]ven if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record." Regennitter v. Comm'r of the Soc. Sec. Admin., 166 F.3d 1294, 1298-99 (9th Cir. 1999); Widmark, 454 F.3d at 1066. Nevertheless, an ALJ need not discuss each and every opinion a physician offers; rather, he need only discuss evidence that is significant and probative of a claimant's disability claim. Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003).

Here, Dr. Lee opined plaintiff has "[n]o signs or symptoms of mental illness or psychiatric condition" and "[h]e would be able to understand, carry out and remember simple instructions[,]" A.R. 120, and the ALJ relied on these opinions, among other evidence, in finding plaintiff does not have a severe mental impairment. A.R. 19-21. Read in its proper context, Dr. Lee's opinions that plaintiff "does not appear to be a responsible person and may have some difficulty" responding appropriately at work are comments about plaintiff's general attitude and disinclination to work, rather than about any mental limitations. In other words, these opinions are not probative of plaintiff's disability claim, and do not undermine the ALJ's finding that plaintiff does not have a severe mental impairment; thus, the ALJ did not err in not specifically addressing them. Howard, 341 F.3d at 1012.

To the contrary, the ALJ's finding that plaintiff does not have a severe mental impairment is supported by substantial evidence,

9

1 including the opinions of Drs. Lee, Gross, and Rath.  Tonapetyan v.
2 Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); see also, e.g., Morgan v.
3 Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999)
4 ("Opinions of a nonexamining, testifying medical advisor may serve as
5 substantial evidence when they are supported by other evidence in the
6 record and are consistent with it."); Saelee v. Chater, 94 F.3d 520,
7 522 (9th Cir. 1996) ("[T]he findings of a nontreating, nonexamining
8 physician can amount to substantial evidence, so long as other
9 evidence in the record supports those findings."), cert. denied, 519
10 U.S. 1113 (1997).

## V

At Step Five, the burden shifts to the Commissioner to show the claimant can perform other jobs that exist in the national economy. Widmark, 454 F.3d at 1069; Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001).  To meet this burden, the Commissioner "must 'identify specific jobs existing in substantial numbers in the national economy that claimant can perform despite [his] identified limitations.'" Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (quoting Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)).  There are two ways for the Commissioner to meet this burden:  "(1) by the testimony of a vocational expert, or (2) by reference to the Medical Vocational Guidelines ["Grids"] at 20 C.F.R. pt. 404, subpt. P, app. 2."[5]

---

[5] The Grids are guidelines setting forth "the types and number of jobs that exist in the national economy for different kinds of claimants.  Each rule defines a vocational profile and determines whether sufficient work exists in the national economy.  These rules represent the [Commissioner's] determination, arrived at by taking administrative notice of relevant information, that a given number of unskilled jobs exist

Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999); Widmark, 454 F.3d at 1069.  However, the ALJ cannot rely on the Grids when the claimant suffers from significant nonexertional limitations; rather, he must obtain the testimony of a vocational expert.  Widmark, 454 F.3d at 1069; Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002).

A claimant's residual functional capacity ("RFC") is what he can still do despite his physical, mental, nonexertional, and other limitations.  Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  Here, the ALJ found that despite plaintiff's severe lumbar disc disease, he has the RFC to perform the full range of light work[6] or, alternatively, the full range of sedentary work.[7]  A.R. 20.  Based on plaintiff's

---

in the national economy that can be performed by persons with each level of residual functional capacity."  Chavez v. Dep't of Health & Human Servs., 103 F.3d 849, 851 (9th Cir. 1996) (citations omitted).

   [6]  Under Social Security regulations, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."  20 C.F.R. §§ 404.1567(b), 416.967(b).  "[T]he full range of light work requires standing or walking for up to two-thirds of the workday."  Gallant v. Heckler, 753 F.2d 1450, 1454 n.1 (9th Cir. 1984); SSR 83-10, 1983 WL 31251, *6.

   [7]  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job

RFC, age, education, and work experience, Rule 202.21 of the Grids[8] directs a finding plaintiff is not disabled if his RFC is light work, or alternatively, Rule 201.21 of the Grids[9] would similarly direct a conclusion that the claimant is not disabled if his RFC is sedentary work.  A.R. 20.  When the ALJ properly applies the Grids to determine a claimant is not disabled, he need **not** "indicate what other work the [claimant] could do[,]" Jt. Stip. at 10:24-25; thus, the objection by plaintiff that the ALJ failed to discuss "other work" is without merit.

**VI**

The plaintiff also contends the ALJ's RFC determinations are not supported by substantial evidence because the ALJ improperly determined he was not a credible witness, failed to consider his mother's testimony, and failed to obtain a vocational expert's testimony.  None of these claims has merit.

//

//

---

duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. §§ 404.1567(a), 416.967(a).

[8] Rule 202.21 provides that a younger individual who is a high school graduate or more, who has performed skilled or semiskilled work in which the skills are nontransferable, and who is able to perform light work, is not disabled.  20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.21.

[9] Rule 201.21 provides that a younger individual (age 45-49) who is a high school graduate or more, who has performed skilled or semiskilled work in which the skills are not transferable, and who is able to perform sedentary work, is not disabled.  20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.21.

12

**A. Plaintiff's Testimony:**

At the administrative hearing, plaintiff testified he stopped working in July 1989 due to a recurring back injury sustained while at work. A.R. 27. The plaintiff also testified that he cannot work because of neck, back and hip pain, with trigger points in his hips that cause "some kind of a spinal cramp that goes around your waist and it can kill you." A.R. 36, 43-44. Plaintiff stated he cannot perform "simple sitting down work" because he gets "stuck" due to the trigger points in his hips, which cause his body to painfully lock up and sometimes prevent him moving for a few hours, and he cannot stay seated, but must move around. A.R. 38-39, 42-43, 53-54. Plaintiff testified that although he can sometimes carry a shopping bag or small bag of dog food short distances, he has problems standing and walking, and he must use a cane so he does not walk with a limp. A.R. 39, 41-42. The plaintiff opined he can stand for approximately 5 or 10 minutes before his left hip starts hurting badly and he needs to take a 10-15 minute break, and he can sometimes walk around a block without using a cane. A.R. 41-42, 54. Plaintiff stated he has trouble sleeping because of his back pain, he does not read much anymore because his eyes are "going out," and he spends much of the day lying down. A.R. 44-45, 48.

Once a claimant has presented objective evidence he suffers from an impairment that could cause pain or other nonexertional limitations, the ALJ may not discredit the claimant's testimony "solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) (en banc); Moisa v. Barnhart, 367 F.3d

13

882, 885 (9th Cir. 2004). Thus, if the ALJ finds the claimant's subjective complaints are not credible, he must make specific findings to support that conclusion. Moisa, 367 F.3d at 885; Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001). Furthermore, if there is medical evidence establishing an objective basis for some degree of pain and related symptoms, and no evidence affirmatively suggesting the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Morgan, 169 F.3d at 599; Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005).

The ALJ found plaintiff "was not a credible witness" for several reasons. A.R. 19, 21. Initially, the ALJ found plaintiff was "very vague in his testimony and avoided answering questions as to his standing capacity and asserted using a cane for ambulatory assistance but was unable to provide the physician who prescribed it." A.R. 19; see also A.R. 32-34, 39-42. Furthermore, the ALJ found plaintiff "received blatant coaching from his common-law wife who attended the hearing as an observer and had to be excused from the hearing room." Id.; see also A.R. 39-41. These findings constitute proper bases for the ALJ's negative credibility determination. Anderson v. Sullivan, 914 F.2d 1121, 1123-24 (9th Cir. 1990); see also Johnson v. Barnhart, 434 F.3d 650, 658-59 (4th Cir. 2005) (ALJ's negative credibility determination supported by substantial evidence that claimant's answers to questions posed by her attorney appeared coached and claimant gave only evasive and unclear answers to questions posed by ALJ); Dixon v. Massanari, 270 F.3d 1171, 1179 (7th Cir. 2001) (ALJ reasonably determined claimant's "vague" and "ephemeral" complaints were not credible).

14

1     The ALJ also found plaintiff's daily activities, which include
2  walking two blocks to the park, walking in the park and throwing balls
3  to his dogs for exercise, shopping for groceries, and visiting
4  neighbors, were compatible with the performance of at least sedentary
5  work.  A.R. 17, 19; see also A.R. 45-48.  "An ability to perform such
6  activities may be seen as inconsistent with the presence of a
7  condition which would preclude all work activity."  Curry v. Sullivan,
8  925 F.2d 1127, 1130 (9th Cir. 1990); see also Batson v. Comm'r of the
9  Soc. Sec. Admin., 359 F.3d 1190, 1196 (9th Cir. 2004) (claimant's
10 daily activities, such as tending to his animals, walking outdoors,
11 going for coffee, and visiting with neighbors contradicted his
12 testimony he could not work because of pain).

14    Additionally, the ALJ found plaintiff's testimony was "not fully
15 substantiated by the medical evidence of record."  A.R. 21.  "Although
16 lack of medical evidence cannot form the sole basis for discounting
17 pain testimony, it is a factor that the ALJ can consider in his
18 credibility analysis."  Burch, 400 F.3d at 681.  Here, the ALJ found
19 that every physician who considered whether plaintiff is disabled has
20 determined plaintiff can work.  A.R. 17-19.  This, too, is a proper
21 basis for rejecting plaintiff's testimony.  Matthews v. Shalala, 10
22 F.3d 678, 680 (9th Cir. 1995).

24    Finally, the ALJ found plaintiff was not credible because he
25 "initially denied using street drugs but later testified that he used
26 marijuana daily. . . ."  A.R. 19.  An ALJ can properly rely on
27 inconsistencies in a claimant's statements to determine credibility.
28 Batson, 359 F.3d at 1196; Connett v. Barnhart, 340 F.3d 871, 873-74

15

(9th Cir. 2003); see also Thomas, 278 F.3d at 959 (ALJ properly rejected claimant's excess pain testimony based, in part, on finding claimant "had not 'been a reliable historian, presenting conflicting information about her drug and alcohol usage.'"); Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (ALJ offered clear and convincing reasons for rejecting claimant's testimony, including that claimant's "testimony and various statements regarding his drinking were not consistent").[10]

Thus, the foregoing reasons by the ALJ are "clear and convincing, sufficiently specific, and supported by substantial evidence." Celaya v. Halter, 332 F.3d 1177, 1181 (9th Cir. 2003); Thomas, 278 F.3d at 959.

**B. Lay Witness Testimony:**

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th

---

[10] On the other hand, the ALJ's reliance on plaintiff's failure to obtain psychiatric care or counseling, A.R. 19, is not proper since plaintiff testified he cannot afford such treatment, A.R. 29, and the ALJ made no finding to the contrary. Warre v. Comm'r of the Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006); Regennitter, 166 F.3d at 1297. Similarly, the ALJ's finding that plaintiff was not credible because his "continued use of mild analgesics including Ibuprofen suggests its efficacy[,]" A.R. 19, is improper since plaintiff testified he cannot afford medical care, A.R. 29, and that when he last saw a physician, the physician gave him a prescription for pain pills – 800 mg. Ibuprofen. A.R. 37, 50-51. Moreover, plaintiff testified he is also self-medicating his pain with marijuana and unidentified "pain pills" he gets from others. A.R. 32-34, 37.

Cir. 2001); Parra, 481 F.3d at 750. In particular, third-party daily activity questionnaires are competent evidence and "an important source of information about a claimant's impairments." Regennitter, 166 F.3d at 1298.

Plaintiff's mother completed a third-party questionnaire in which she indicated plaintiff spends a typical day in "pain and miserable" and his normal sleeping hours are "off and on due to **lifestyle** and pain." A.R. 102 (emphasis added). Additionally, she noted that the majority of plaintiff's meals are cooked by a friend. A.R. 103. When asked if plaintiff has difficulties getting along with family, friends, co-workers or others, plaintiff's mother stated: "Homeless. Don't see him very often, but would like to see him more often." A.R. 105. Furthermore, plaintiff's mother was unable to say whether plaintiff has trouble concentrating, remembering, following instructions, or finishing a job, or whether plaintiff did any shopping or recreational activities. A.R. 103-04, 106.

The ALJ, however, never discussed plaintiff's mother's statement in assessing plaintiff's RFC, and this was legal error. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 975 (9th Cir. 2000). Nevertheless, the Commissioner contends this error is harmless. Jt. Stip. at 5:9-6:13. "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability

17

determination." Stout, 454 F.3d at 1056; Robbins, 466 F.3d at 885. Here, the statement by plaintiff's mother sheds little insight into any physical and/or mental limitation plaintiff may have. Indeed, for the most part, plaintiff's mother merely indicates she is either unaware of any functional limitations plaintiff has because she does not see him often, or that plaintiff's problems, such as fear of being "hassled" by the police, are related to plaintiff's homelessness, rather than any disability. Since nothing in plaintiff's mother's statement is inconsistent with the ALJ's assessment of plaintiff's RFC, the Court can confidently conclude the ALJ's failure to consider plaintiff's mother's questionnaire was harmless error.

### C.  Vocational Expert's Testimony:

Finally, plaintiff contends the ALJ erred in using the Grids since plaintiff has a severe mental impairment and experiences pain. Jt. Stip. at 11:2-12:8. However, as discussed above, substantial evidence supports both the ALJ's Step Two determination that plaintiff does **not** have a severe mental impairment and the ALJ's Step Five determination that plaintiff's pain does not affect his ability to perform the full range of light or sedentary work. "Because [the plaintiff] has failed to establish the existence of a significant nonexertional impairment, the [ALJ] correctly applied the Grids" to determine plaintiff is not disabled. Macri v. Chater, 93 F.3d 540,

//
//
//
//
//

18

545 (9th Cir. 1996); Razey v. Heckler, 785 F.2d 1426, 1430 (9th Cir. 1986), amended by, 794 F.2d 1348 (9th Cir. 1986).

**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is denied; and (2) the Commissioner's decision is affirmed, and Judgment shall be entered in favor of defendant.

DATE:   June 25, 2007              /s/ Rosalyn M. Chapman
                                   ROSALYN M. CHAPMAN
                                   UNITED STATES MAGISTRATE JUDGE

R&R\01-0092.MDO
6/25/07